# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 CHRISTOPHER A. EDGECOMB**
**United States Army, Appellant**

ARMY 20120891

Headquarters, 3rd Infantry Division and Fort Stewart (Pretrial)
Headquarters, Fort Stewart (Post-trial)
Tiernan P. Dolan and Alexander L. Taylor, Military Judges
Colonel Randall J. Bagwell, Staff Judge Advocate (advice)
Lieutenant Colonel Francisco A. Vila, Staff Judge Advocate (recommendation)

For Appellant: Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Captain A. Jason Nef, JA; Captain Brian D. Andes, JA (on brief).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Catherine L. Brantley, JA; Captain T. Campbell Warner, JA (on brief).

30 September 2014

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a special court-martial convicted appellant, contrary to his pleas, of two specifications of absence without leave (AWOL), five specifications of making a false official statement, one specification of malingering, one specification of larceny, and three specifications of wearing unauthorized badges, in violation of Articles 86, 107, 115, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 907, 915, 921, 934 (2006) [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for seven months, and reduction to the grade of E-1. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for 103 days, and reduction to the grade of E-1. The convening authority also rescinded a previously granted six-month waiver of automatic forfeitures and

instituted a three-month waiver of automatic forfeitures, for the benefit of appellant's dependents.

This case is before us for review under Article 66, UCMJ. One of appellant's four assignments of error warrants discussion and relief. In particular, we find an unreasonable multiplication of charges where appellant was convicted of both a ten-day AWOL and a separate, shorter AWOL within that ten-day period. Our resolution of this issue moots two of appellant's other assignments of error. Additionally, although not raised by the parties, we find two other instances of unreasonable multiplication of charges that warrant discussion and relief, one instance involving two specifications of false official statements under Article 107 and another instance involving two other false official statements under Article 107 in conjunction with appellant's malingering conviction under Article 115. We also briefly discuss one matter arising from appellant's personal submissions made pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## BACKGROUND

Appellant was stationed at Fort Stewart, Georgia. On 3 April 2012, appellant spoke with his squad leader, Staff Sergeant (SSG) KB, and informed him he was having same-day back surgery at the Savannah Pain Management Center in Savannah, Georgia. During the same conversation, appellant indicated he would be sedated from the surgery and unable to return to work. Staff Sergeant KB requested appellant provide official medical paperwork evidencing appellant was on 48-hour quarters.

On the morning of 4 April 2012, after not receiving the requested medical paperwork, SSG KB called appellant and again requested appellant provide documentation from his doctor. Appellant indicated he was on quarters and would immediately call his doctor and that the unit should have some documentation by lunch. Appellant's unit received an email that day purported to be from appellant's doctor. However, SSG KB contacted the doctor's office and determined appellant was not a patient at the Savannah Pain Management Center.

On 5 April 2012, SSG KB called appellant once again and told him to return immediately to work. Appellant responded he could not because he was on his way to Florida because his wife and two children had been in a car accident. Staff Sergeant KB ordered appellant to return to work to be put on leave or pass. Appellant did not return to his unit until 10 April 2012.

## LAW AND ANALYSIS

### Unnecessary Multiplication of charges

*a.    AWOL and Failure to Report During the Same Period*

Appellant was convicted of AWOL during the period 4 April 2012 to 10 April 2012 (the Specification of Charge I). The government also charged appellant with failure to obey a lawful order to return to Fort Stewart on or about 5 April 2012, a violation of Article 92 (the Specification of Charge II). Appellant, however, was found guilty of the "lesser included offense" of Article 86. Appellant argues on appeal his convictions for AWOL from 4 April 2012 to 10 April 2012, and his failure to report on 5 April 2012, constitute an unreasonable multiplication of charges for findings. We agree.

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts–Martial 307(c)(4). The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell,* 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz,* 55 M.J. 334, 337 (C.A.A.F. 2001)).

In *Quiroz,* our superior court listed five factors to help guide our analysis of whether charges have been unreasonably multiplied:

(1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?

(2) Is each charge and specification aimed at distinctly separate criminal acts?

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

(4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

55 M.J. at 339 (internal citation and quotation marks omitted) (internal alteration reflects the holding in *Quiroz* that "unreasonably" will be utilized instead of "unfairly").

It is well established that a soldier cannot be found guilty of failure to report when the soldier is contemporaneously absent from his unit. *See* Rule for Courts-Martial [hereinafter R.C.M.] 307(c)(4) discussion ("[A] person should not be charged with both failure to report for a routine scheduled duty, such as reveille, and with absence without leave if the failure to report occurred during the period for which the accused is charged with absence without leave."); *United States v. Lynch*, 22 U.S.C.M.A 457, 460, 47 C.M.R. 498, 501 (1973) ("an unauthorized absence that is single and uninterrupted cannot be fragmented into two or more separate periods, with each part made separately punishable.") (citation omitted) (internal quotation marks omitted).

In this case, appellant's conviction for AWOL on 5 April 2011 is within the same time period as his ten-day AWOL, is predicated upon the same criminal act, and is necessarily included therein. As such, we find these two specifications constitute an unreasonable exaggeration of appellant's misconduct. The government concedes these specifications are an unreasonable multiplication of charges. We accept this concession, and accordingly, we will take appropriate action in our decretal paragraph to address this error.

### b. *False Official Statements and Malingering*

Appellant was convicted of two specifications of providing false official statements to SSG KB on 3 April 2012 (Specifications 1 and 2 of Charge III, respectively). Staff Sergeant KB testified appellant stated he was having same day surgery at the Savannah Pain Management Center and also that he would be sedated and placed on quarters. These two statements by appellant appear to have been made during the same conversation.

Under the circumstances of this case, we find that appellant gave only one false official statement during his conversation with SSG KB for purposes of Article 107. *See United States v. Sanchez,* 39 M.J. 518, 520 (A.C.M.R. 1993) ("Better practice would have been to include all the false averments in the specification."). The government's election to charge appellant twice for these two false official statements as separate specifications was an unreasonable multiplication of charges which should be corrected. R.C.M. 307(c)(4) discussion; *see also United States v. Morrison,* 41 M.J. 482, 484 n. 3 (C.A.A.F. 1995). Despite the lack of a defense objection at trial, we cannot allow this error to go uncorrected. UCMJ art. 66(c). Thus, we will not apply the doctrine of waiver. *See United States v. Claxton,* 32 M.J. 159, 162 (C.M.A. 1991).

Ordinarily, we would consolidate these two specifications into a single specification. However, we must now analyze whether these two specifications are also an unreasonable multiplication of charges with appellant's conviction for malingering under Article 115 (the Specification of Charge IV). Appellant's false

official statement on 3 April 2012 that he was having back surgery at the Savannah Pain Management Center formed the basis for his malingering conviction under Article 115. Applying the *Quiroz* factors to these offenses, we find that Specifications 1 and 2 of Charge III constitute an unreasonable multiplication of charges with the Specification of Charge IV for findings, requiring that we set aside the findings of guilt for Specifications 1 and 2 of Charge III. As such, we will take appropriate action in our decretal paragraph to address this error.

### *c. Two additional False official statements*

Appellant is convicted of two specifications of making a false official statement on 4 April 2012 (Specifications 3 and 4 of Charge III, respectively). Namely, appellant first stated to SSG KB words to the effect of "I am on quarters following my surgery," and secondly words to the effect of "I will have a doctor email the orderly room a summary of my procedure and quarters slip." Staff Sergeant KB's testimony indicates these two falsehoods were provided by the appellant to SSG KB during the same conversation. Applying the five *Quiroz* factors to these offenses, we find that Specification 3 of Charge III constitutes an unreasonable multiplication of charges with Specification 4 of Charge III for findings, requiring a consolidation of the findings of guilt into one specification.

### *SJA Addendum Recommendation to Modify Previously Approved Automatic Forfeiture Waiver*

On appeal, appellant's personal submissions raise the issue that he was denied notice and an opportunity to comment on matters contained in the Addendum to the Staff Judge Advocate's Recommendation (SJAR) to the convening authority.

There exists no requirement that the SJAR Addendum be served on the defense unless it contains a "new matter." R.C.M. 1106(f)(7). The question of whether a matter constitutes a new matter is reviewed on appeal de novo. *United States v. Key*, 57 M.J. 246, 248 (C.A.A.F. 2002); *United States v. Chatman*, 46 M.J. 321, 323 (C.A.A.F. 1997).

The military judge sentenced appellant to a bad-conduct discharge, confinement for seven months, and reduction to E-1. On 11 October 2012, the convening authority approved appellant's request for waiver of automatic forfeitures for a period of six months effective 19 September 2012.

On 17 December 2012, after the submission of appellant's post-trial matters pursuant to R.C.M. 1105 and 1106, the SJA recommended in the addendum to his legal advice that the convening authority reduce the length of time to waive automatic forfeitures from six months to three months and reduce appellant's period of confinement to 103 days. As of 17 December 2012, the date of action, appellant

had served 103 days in confinement.  This action resulted in appellant's immediate release from confinement.

Appellant now complains the SJA's legal advice to reduce the forfeiture waiver period was not provided to him for comment prior to convening authority action.  Appellant asserts the SJA advice to reduce the waiver constitutes a "new matter" that must be served on the accused in accordance with R.C.M. 1105 and 1106.

In *United States v. Spears,* 48 M.J. 768 (A.F. Ct. Crim. App. 1998), the Air Force court noted that although the literal requirements for the SJA's post-trial recommendation under RCM 1106 did not extend to waiver of automatic forfeitures under Article 58b(b), "concepts of basic fairness and procedural due process" were violated by not providing the servicemember with a copy of the recommendation and an opportunity to "comment before sending it to the convening authority for his action on the waiver request." *Id.* at 775–76.  Drawing an analogy to the notice and comment provisions of R.C.M. 1106, the court stated:

> The clear purpose behind the rule was to give the defense an opportunity to respond to the SJA's position in post-trial legal advice provided to the convening authority. The rule on new matter obviously prevents the SJA from bringing up new issues from outside the record to the convening authority and getting the last say without the defense even knowing about it. When the rule was written, Articles 57(a) and 58b, UCMJ, did not exist and the issue presently before us could not be foreseen.

*Id.* at 775.

Here the SJA did not provide appellant notice and an opportunity to comment on the modification.  We find that under different facts, the advice contained in the SJAR Addendum to reduce the length of waiver of automatic forfeitures could constitute a "new matter." *See United States v. Brown,* 54 M.J. 289 (C.A.A.F. 2009); *Chapman*, 46 M.J. 321.  Here, however, operation of law would have stopped the waiver of forfeitures upon appellant's release from confinement, even without the SJA's comment.  The record indicates the accused served 103 days in confinement.  Moreover, the automatic forfeitures did not begin until 14 days after he was jailed.  The new waiver period was for 3 months (90 days).  Cumulatively, this resulted in the automatic forfeitures being waived for the entire duration of appellant's confinement period.  Thus, appellant has failed to demonstrate any prejudice.

**CONCLUSION**

The findings of guilty of Charge II and its Specification and Specifications 1 and 2 of Charge III are set aside. Charge II and its Specification and Specifications 1 and 2 of Charge III are dismissed. Specification 3 of Charge III is merged with Specification 4 of Charge III to read as follows:

> In that [appellant], U.S. Army, did at or near Fort Stewart, Georgia, on or about 4 April 2012, with the intent to deceive, make statements to SSG KB, to wit: "I am on quarters following my surgery in Savannah," and "I will have my doctor email the orderly room a summary of my procedure and quarters slip" or words to that effect, which statements were totally false, and was then known by [appellant] to be so false.

The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted, and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). In evaluating the *Winckelmann* factors, we find no dramatic change in the penalty landscape or exposure at this special court-martial which might cause us pause in reassessing appellant's sentence. Second, appellant was sentenced by a military judge. Third, the gravamen of appellant's misconduct remains. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

After reassessing the sentence and the entire record, the sentence is AFFIRMED. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

ANTHONY O. POTTINGER
Chief Deputy Clerk of Court